WILLIAM H. KING, RESPONDENT, *v.* UTAH CEN-
TRAL RAILWAY COMPANY, APPELLANT.

SCHOOL DISTRICTS.—BOUNDARIES.—TAXATION.—Sec. 1912, 1 Comp.
Laws, 677, gives the county court power to divide the county
into school districts, and to change the boundaries of such dis-
tricts, and also provides that taxes shall be assessed in each dis-
trict for school purposes. A county court extended the boun
daries of a school district fifteen miles westward taking in cer-
tain of defendant's property twenty-five miles away from the
school house; the intervening country was mountainous and dif-
ficult to cross; *held*, that the defendant's property was liable for
the tax assessed upon it for school purposes.

APPEAL from a judgment of the district court of the first district. The opinion states the facts.

*Mr. Le Grand Young,* for the appellant.

*Mr. Samuel R. Thurman* and *Mr. William H. King,* for the respondent.

ZANE, C. J.:

The plaintiff instituted this suit in the first district court to recover $474.56 of taxes assessed to aid in building a school house in the Eighth school district of Millard county, Utah, and judgment was entered for the amount, from which the defendant has appealed to this court. The

school house is located near the eastern boundary of the
district, and the assessment was upon railroad property of the
defendant situated about twenty-five miles away, and close
to the western boundary of the district. Much of the in-
tervening country is mountainous, and difficult to cross in
the winter. In 1885 the county court extended the boun-
daries of the district westward about fifteen miles. On the
land so annexed, the defendant railroad, some dwellings,
with small inclosures, and a few stock ranches are located.
The entry of the judgment mentioned is assigned as error
for the reason, as defendant insists, that the school house
was a local improvement, and that any school kept in it
will not benefit its property. The territorial law making
provision for a system of district schools declares "that the
county court shall divide their respective counties into
school districts, where not already so divided, name and
number the same, prescribe limits, change the boundaries
thereof, and may consolidate two or more school districts
into one, should the public good so require; provided, that
when school districts have built a school house by a tax on
the whole district, said district shall not be divided until
equitable provision has been made for school houses in the
new district to be organized. Settlers on or near county
lines of two or more counties may be formed into school·
districts by the mutual agreement of the county courts of
such counties.    *    *    *" 1 Comp. Laws Utah, 677.
Ample authority is here given to the county courts of the
respective counties to divide them into school districts and
to change the boundaries thereof; and in case any portion
of a district that has contributed by taxation to the
building of a school house is detached, equitable provision
is required to be made for a school house in the new dis-
trict. Other provisions of the law provide for the election
of school trustees, the selection of a county superintendent
and for the assessment of taxes in each district to build
school houses, for the payment of teachers, and other
school purposes. The first section of the revenue law (Id.
719) also makes provision for the assessment of three mills
on the dollar for the benefit of district schools. A law of
congress also creates the office of commissioner of schools

for the territory, and confers upon him large powers with respect to district schools.

From these provisions it is apparent that congress or the territorial legislature did not regard the benefit of the district schools as merely local. The school house which the tax in question was to aid in building was but a means to an end,—the cultivation and improvement of the mental and moral powers of the rising generation. The spread of intelligence and the promotion of virtue by means of a school are wider in their effects than the benefits of the improvements of highways or the lighting of a city. The effects of education in the common schools, and the advantages from preparation in them for the duties of life, differ from the benefits to the public from material objects and structures constituting public improvements. Grown men and women do not remain at the place of their education, and they take the power of the knowledge and the capacity they there acquire with them out in the world, and make it felt far and wide. Many of the most useful members of society in any populous district have usually received, in part, their training and education in various, and often in distant places; so that the knowledge and capacity that make a community prosperous and happy were largely acquired in various others. Some writers upon national, state, and municipal governments hold that a public tax should be appropriated alone in the protection of life, liberty, and property; that its appropriation should not be extended to those objects which indirectly contribute to such ends; such as the support of public schools. But the prevailing doctrine is to the contrary, and it is believed that the school house and the school master do more to protect and elevate society than prisons and policemen. It is unquestionably true that the safety and happiness of civilized society rest mainly on the intelligence and virtue of the people, and that the public good requires the education of the children and youths of the country by means of common schools. The extension of the school district in question was authorized by the territorial law, and the extension of the boundaries of the district by which defendant's property was subjected to the tax complained of was

not palpably and clearly wrong. We therefore hold the assessment valid. The judgment of the court below is affirmed.

ANDERSON, J., concurred.