12  251
12  372

## THE BOARD OF EDUCATION OF THE CITY OF OGDEN, APPELLANT, *v.* MORONI F. BROWN, AS COUNTY ASSESSOR, AND FRANK B. HURLBUT, AS COUNTY COLLECTOR OF WEBER COUNTY, RESPONDENTS.

1. PUBLIC SCHOOLS.—SCHOOL TAXES.—POWER TO LEVY.—STATUTORY CONSTRUCTION.—LEGISLATIVE INTENT.—DELEGATION OF LEGISLATIVE POWER.—The legislature of Utah territory passed an act in the year 1890 (Sess. Laws 1890, p. 110), providing for a uniform system of free schools throughout the territory, § 121 of which provides that the board of education shall prepare an estimate and levy the taxes necessary for the support and maintenance of the district schools, and to pay the interest accruing on bonds and for sinking fund, and shall cause to be certified to the "assessor and collector of said city," who is required to place the same on the "tax roll of the city," and collect the tax without additional compensation. Session Laws 1892, Ch. 68, p. 74, approved March 10, 1892, to take effect January 1, 1893, abolishes the office of assessor for each incorporated city, town and village, and the office of collector in each city of the first and second class, and provides that the duties formerly performed by these officers shall in 1893 and thereafter, devolve on the assessors and collectors of the counties in which the respective cities are situated. On the same day (March 10, 1892), an act was approved providing for a uniform system of free schools (Sess. Laws 1892, Ch. 80, p. 101); § 129, of which provides that the board of education shall prepare a statement and estimate of the amount necessary for the support and maintenance of the schools under its charge and the amount necessary to pay interest on bonds and for sinking fund, and shall cause to be certified "to the assessor and collector for said city" and "the assessor and collector for the city after having extended the valuation of property on the assessment rolls, shall levy such per cent," and "the city assessor and collector is hereby authorized and required to place the same on the tax roll of the city," and that the collector shall collect such tax without additional com-

pensation for assessing and collecting. *Held, First,* that the legislature intended that the phrases "assessor and collector for the city," and "tax roll of the city," found in § 129 of the latter act should have a dual meaning, and that the phrase "assessor and collector for the city," meant for the year 1892, the "city assessor and collector," but for 1893 and thereafter the "county assessor" and "county collector," who are then reqiured to assess and collect the city taxes, and that the phrase "tax roll of the city" meant for the year 1892 the tax roll prepared by the city assessor and collector, but that for 1893 and thereafter the tax roll prepared by the county assessor on which the city taxes were extended, as provided in Sess. Laws 1892, Ch. 68, § 5. *Second*—that the legislature did not intend to delegate the power to levy the school taxes to a ministerial officer by that clause of § 129, which provides that the "assessor and collector for the city  *   *   *   *  shall levy such per cent," but that the board of education was vested with such power in said section by being required to "prepare a statement and estimate of the amount necessary for the support and maintenance of schools" which is equivalent to a levy of the tax.

2.  ID.—ID.—ID.—ASSESSMENT ROLL.—EQUALIZATION.—Sess. Laws of 1892, Ch. 68, § 4, which provides that the county court shall equalize the assessment roll of the whole county including the assessment for general city taxes of cities of the first and second class, and provides that the Mayor or member of the city council may sit with the County Court as a member of the equalizing board, empowers the County Court to equalize the assessment roll mentioned in Sess. Laws 1892, Ch. 80, § 129, relating to school taxes levied in cities of the first and second class.

(No. 633.  Decided Dec. 21, 1895.  42 P. R. 1109.)

APPEAL from the District Court of the Fourth Judicial District.  Hon. H. W. Smith, *Judge.*

*Mandamus* by the board of education of the city of Ogden against Moroni F. Brown, as assessor, and Frank B. Hurlbut, as collector of Weber county.  From a judgment for defendants, plaintiff appeals.  *Reversed.*

*Mr. E. M. Allison, Jr.,* and *Messrs. Williams, Van Cott & Sutherland,* for appellant.

On all these sections it is claimed by the respondents that section 129 (either of 1892 or 1894) is totally void as to the collection of any tax, as section 9 abolished the offices of city assessor and collector, and that when section 129 refers to "assessor and collector for the city," and to the "tax roll of the city," the law refers to tax officers and assessment rolls having no existence, and therefore no tax can be levied or collected.

As section 129 of the laws of 1892 is for all our purposes substantially like section 129 of the laws of 1894, we shall refer to the former section, so as to afford a clearer idea of our position, as it is manifest that the latter section is valid if the former is so.

Section 129 and sections 1, 5, 6, 7 and 9 were approved on the same day, to-wit: March 10, 1892.

It will further be noticed that section 1 only provides for the county assessor and collector doing the work in cities for 1893 and thereafter, so that after the passage of that section the city assessor and collector would still collect such school tax for the year 1892. Hence, it is apparent from this one circumstance that the language in section 129 must do a double duty,—*first,* must be such as to show the legislative intention to have city assessors and collectors assess and collect for 1892, notwithstanding the passage of sections 1, 5, 6, 7 and 9; and, *second,* to show the legislative intention after 1892 to have the county assessors and collectors do the work theretofore devolving upon city assessors and collectors.

In section 129, the pertinent language is "assessor and collector *for* the city." It is not the city assessor and collector, and refers wholly to the persons who assess and collect for the city; without restricting or enlarging the

language in the least, it easily and naturally refers to the persons who do such assessing and collecting for the city. It is not necessary, nor in our opinion natural, to say that these words by their very force designate and describe certain city officers. "President and Clerk" in the same section refers to specific officers. The language will bear no other construction, but "the assessor and collector for the city" refers only to the persons who assess and collect for cities, whoever such persons may be.

As above stated, this language did a double duty, because in 1892 section 1 was not in force, as it provided that "in the year 1893 and thereafter * *" all assessments were to be made by county officers; but after 1892, "assessor and collector for the city" referred to county officers, as such city officers then ceased to exist.

Section 129 referred to and was intended to refer to two different sets of officers. It was necessary that such language should be used as to bear such construction. Viewing sections 1, 5, 6, 7 and 9 and section 129 in this light, it will become at once apparent that the legislative language is appropriate to express the legislative intent. The language in section 6 demonstrates such legislative intention, as in express language it refers to the county collector as "collector of the city tax * * *," and "collector of the city tax" is synonymous with "collector of the city;" and the whole of chapter 68 in which sections 1, 5, 6, 7 and 9 are contained, demonstrates the legislative intention that county assessors and collectors were to perform such duties for the cities, and section 129 shows the legislative intention to have the assessors and collectors for cities, whoever they might be, do corresponding duties for school boards.

It is also contended that "tax roll of the city" in section 129, vitiates the law, as there is no such roll, it having been abolished by sections 1 and 9. Largely what is

said of the contention as to "assessor and collector for the city" applies here, because in 1892 section 129 of the laws of 1892 did a double duty; first, as "tax rolls of the city" referred after 1892 to tax rolls of the city in the sense that they were prepared and owned by the city's officers, but in 1893, sections 1, 5, 6, 7 and 9, were in effect and then "tax rolls of the city" referred to the rolls used as such, whether prepared by the county or city officers. The legislature so intended, because it expressly provided that sections 1, 5, 6, 7 and 9 should not go in effect in 1892. Hence, section 129 as to "tax roll of the city" meant the city rolls proper, but in 1893 there were to be no city rolls proper but there was to be a "tax roll of the city" prepared by the county officers, and it was necessary to use language susceptible to such double construction. This fact is demonstrable, as section 1 provides "* * * and a list of the property in each incorporated city, town or village in his county and the valuation thereof shall be so made by the county assessor that the property in each and the valuation thereof can be separately shown;" hence, here was a "tax roll of the city" just like the city had prior to 1893, but was prepared by county officers, yet still was a tax roll of the city and performed the same function.

Section 5 provides for the extension of the city tax on the county rolls, the collection of the city tax by the county collector, and the sale of property for delinquent city taxes as in other cases; and when section 129 refers to the "tax roll of the city" it manifestly means the above county rolls. In fact it so states in plain and unambiguous language as the words intelligently refer thereto and to no others.

Section 6 refers expressly to a "collector of the city tax," and this can legitimately mean nothing else but the "collector of the city."

It is also objected that the tax under section 129 is invalid because there is no assessor for the city.

This contention emphasizes and makes stronger our foregoing position. Section 129 provides, " * * * and the assessor and collector for the city, after having extended the valuation of the property on the assessment rolls shall levy such per cent. as shall, as near as may be, raise the amount required by the board; * * *."

As before stated, in 1892 this rate per cent. was levied by city officers in the specific sense of the term, but in 1893 and thereafter, the assessments in cities were made by the county assessor according to the mandate of section 1 which expressly so provides, while also providing for separate assessment in the cities by the county assessor.

As the words above quoted had a double duty to perform in referring to city officers in 1892 and county officers thereafter, it was necessary to use language susceptible of such double construction. This was done as the language for 1892 refers to city officers proper, and thereafter, by reference to section 1, it is seen that the county assessor answers the description of, and performs the duties theretofore devolving upon the "assessor for the city."

The legislature, under the circumstances, could not well express itself plainer, unless section 129 had been worded in one way in 1892 and in another way for the condition of the law existing thereafter.

The lower court also held that the law in question was unconstitutional as a delegation of the taxing power from the legislative department to the assessor and collector.

There are two conclusive answers to such objection:

*First*—It is elementary that the power to tax is legislative, and such power cannot be delegated except in certain cases; but it is also just as true that there is a fundamental difference between originating the power to tax and the mere administration of such power when created; the

former is a legislative duty not to be delegated and the latter is an administrative function usually and properly delegated.

*Second*—As such school districts are corporations and occupy a certain territorial sub-division to carry on the public schools, it is a recognized exception that it is proper to delegate the taxing power to such bodies as they but administer is place of the sovereign power.

The following are authorities directly in point on the above propositions:   Cooley on Tax., pp. 61-3 (2 ed.); 4 W. Va. 499, *Kuhn* v. *Board of Education;* 36 Tex. 554; *Kinney et al.* v. *Zimpleman. et al.;* 42 Pa. St. 358, *Wharton et al.* v. *School Directors.*

It is fundamental that a statute is not to be isolated from the great body of law of which it forms a part, but is to be taken as forming a part of one great system, and is to be construed with reference to co-ordinate rules and statutes.   *Wilson* v. *Donaldson,* 10 A. S. R. 48 (117 Ind. 356); *Riggs* v. *Palmer,* 115 N. Y. 506; *Tonnele* v. *Hall,* 4 N. Y. 140; *People* v. *Lacombe,* 99 N. Y. 49; *French* v. *Cowan,* 4 N. Eng. Rep. 685-6.

In 95 A. D. 292 (3 Houston, 474), *Pickering* v. *Day,* it is said:

"Court must give to language of statute, which is deficient in precision and clearness and faulty or imperfect in phraseology or structure, such an interpretation as may appear best adapted to effectuate the object contemplated in its enactment; and it is always to be presumed, in such case, that the legislature intended that the most reasonable and beneficial interpretation should be given to the language which they have used.

Where language of statute is not clear, and it is obvious that by a particular construction great public interest would be endangered or sacrificed, the court ought not to

presume that such construction was intended by the makers of the law."

In construing a statute, wherever the intention of the legislature can be discovered it should be followed with reason and discretion, though such construction seems contrary to the letter of the statute.    3 Cowen, 89, 95-6, *Jackson* v. *Collins.*

In 11 Cal. 22-4, *Ex parte Ellis,* it is said:

"As it is the duty of the courts to execute all laws according to their true intent and meaning, that intent, when collected from the whole and every part of the statute taken together, *must prevail, even over the literal sense of the terms and control the strict letter of the law,* when the letter would lead to possible injustice, contradiction and absurdity."    *Landers* v. *Smith,* 1 N. Eng. Rep. 897; *Ryegate* v. *Wardsboro,* 30 Vt. 746; *Ingraham* v. *Speed,* 30 Miss. 410; *Burch* v. *Newbury,* 10 N. Y. 374; *Taylor* v. *Taylor,* 10 Minn. 107; *Gyger's Estate,* 65 Penn. St. 312; *Blanchard* v. *Sprague,* 3 Sumn. (U. S.) 282; *Brinsfield* v. *Carter,* 2 Ga. 143.

Again, it is a familiar rule of construction, if it becomes necessary in order to give full effect to the intention of the legislature, that words will be eliminated from the statute, or other words substituted, or words transposed in order to effectuate from the whole statute the intention and meaning of the legislature.    Endlich on Inter. Stats., §§ 301, 302, for numerous illustrations; *Reg.* v. *Hulme,* L. R. 5, Q. B. 377; *Fosdik* v. *Perrysburg,* 14 Ohio St. 472; *Turner* v. *State,* 40 Ala. 21; *Worrell* v. *State,* 12 Ala. 732; *Nichols* v. *Halliday,* 27 Wis. 406.

In 87 A. D. 588, (23 Md. 513) *Hardesty* v. *Taft,* it is said:

"Laws to carry on the government are to receive a liberal construction to effectuate the objects designed; and

if the legislative purpose can be arrived at, in the absence of express language, that meaning is to be observed and obeyed."

The carrying on in all its branches of our public schools is as vitally important as the carrying on of the government proper.

The principle is well recognized in the Supreme Court of the United States and in other cases too numerous to cite, that wherever a law is doubtful or ambiguous, the contemporaneous construction of those who have been called upon to carry such law into effect, is entitled to great consideration, and is not to be overruled without cogent reason. 107 U. S. 406, *Hahn* v. *United States;* 95 U. S. 763, *United States* v. *Moore;* 10 Whea. 51, 63, *U. S.* v. *Halstead.*

In 23 Am. and Eng. Enc. Law p. 339-40, it is said:

"Courts in construing or interpreting a statute, give much weight to the interpretation put upon it at the time of its enactment, and since by those whose duty it has been to construe, execute and apply it; and especially is this true, where the statute is an ancient one, and the construction that of contemporaries who had special knowledge of the subject."

A construction of an election law that has been accepted and acted upon by the officers whose duty it is to administer the law will not be ignored by the courts, unless it is palpably wrong. 30 A. S. R. 254 (130 Ind. 561). *Parvin* v. *Wimberg;* 180, 356, *Kelly* v. *Multnomah Co.; Stuart* v. *Laird,* 1 Cranch, 299.

*Mr. A. R. Heywood, Mr. R. H. Whipple* and *Mr. A. J. Weber,* for respondents.

### NO INTERPRETATION NEEDED.

The defendants claim that no interpretation of these words is needed nor can any be regarded, that is to say,

we claim that the wording of the law of 1894 is unambiguous, not inconsistent and leads to no absurdity whatever.

"But all the rules (of interpretation) are to be understood as subject to the qualifications that where the language is free from ambiguity, leads to no absurdity and hence needs no interpretation, nothing beyond it can be regarded." Endlich on Interpretation of Statutes, § 27, p. 36; Sutherland on Statutory Construction, § 234, p. 310.

### DELEGATION OF POWER.

The court below held that section 129 of the law of 1894 is void so far as it empowers the assessor and collector of the city to levy the tax, for the reason that it is an attempt by the legislature to delegate its power of legislation to a purely ministerial officer.

That portion of the section reads:   "And the assessor and collector of the city, after having extended the valuation of property on the assessment rolls, *shall levy such per cent.* as shall, as near as may be, raise the amount required by the board."

The legislature should have provided for and levied the tax itself, or it should have provided in the law that the board of education, which is a *quasi* municipal corporation, should itself levy the tax; that is to say, the legislature might have levied the tax direct or it might have authorized the school district to do so.   The latter would have been legal for the reason that it would not have been in fact a delegation of power, although in the books it is so stated, because municipal corporations are involuntary corporations.   They may have their corporate existence thrust or forced upon them by the state itself and hence are part of the state, and hence the legislature may authorize a school district, a city, or a county court to levy a tax, but whenever that is done, the levy must be made by the

legislative body of the municipal corporation; that is to say, it must be made by the board of education, the city council or the county court, sitting as such with powers to legislate. It could not be done by any member of either of those boards or by any ministerial officer representing the school district, city or county. The authorities are uniform that an act empowering a private corporation or a single person to perform a legislative duty is absolutely void as being an illegal delegation of legislative power. The fact that a person is an officer of the corporation can make no difference, because the levy of a tax is a legislative act. The assessor and collector mentioned in the school law of 1894 is a purely ministerial officer. His duties are prescribed by the statute and are purely ministerial in their nature. They have no legislative duties whatever.

Taxation may be divided into three separate sets: *First,* the assessment which is in its nature, judicial; *second,* the levy which is purely legislative; *third,* the collection which is administrative in its nature.

Judge Smith in commenting upon this feature of the case at the trial, said: "In my opinion the law should have provided that the school district through the board of education, sitting as a board, should have made the levy and so made its record show. Then the board should have certified up the amount estimated to be necessary to run the schools with their certificate showing that it had made the levy. The matter of fixing the rate having the assessed valuation and the amount of money to be raised, the levy having been made by the board, is a mere matter of computation and is a purely ministerial act, and might have been done by the assessor and collector; but that is not what the law commands. It makes it mandatory upon the ministerial officer to levy the tax."

Section 4 of the Organic Act of this territory provides

"that the legislative power and authority of said territory shall be vested in a governor and legislative assembly."

The corresponding section of the California constitution, article 4, section 1, reads as follows: "The legislative power of this state shall be vested in a senate and an assembly."

The supreme court of California in the case of *Houghton* v. *Austin,* 47 Cal. page 646, in construing this section, says:

"Section 3696 of the Political Code is unconstitutional in so far as it delegates to the state board of equalization the right to fix the rate of taxation, after allowing for the delinquency in the collection of taxes, because it is a delegation of legislative power to said board."

This case in many of its features is very similar to the one at bar except that in this case, it is held that a state board even cannot be empowered to perform legislative duties. The question was whether the section of the political code which authorized the state board to fix the rate of state taxation and levy the tax, was void as being a delegation of legislative power. The court held that it was void.

In deciding this question it seems only necessary to determine two questions, viz.:

*First,* is the levy of a tax a legislative act? *Second,* if the levy of the tax in this case is a legislative act, has there been an illegal or unauthorized delegation of power to levy the tax? That the levy of a tax is a legislative act will scarcely admit of any dispute. The authorities are uniform upon this subject. It was repeatedly assumed to be a legislative power by Chief Justice Marshal. *McCulloch* v. *Maryland,* 4 Wheat. 428; *Providence Bank* v. *Billings,* 4 Peters, 561. The supreme court of California has said that the levying of a tax is necessarily a legislative act. *People* v. *McCreary,* 34 Cal. 454; *Houghton* v. *Austin,* 47 Cal. 646, p. of opin. 654.

That the power to tax is a legislative power *only*—see Cooley on Taxation, page 62; State R. R. Tax Cases, 92 U. S. 575.

As to the second proposition, Cooley on Taxation says: "It is a general rule of constitutional law that a sovereign power conferred by the people upon any branch or department of the government is not to be delegated by that branch or department to any other." Cooley on Tax., page 61.

I am aware that the same authorities, in some respects, are cited by opposing counsel. The difference seems to be in the fact that counsel disagree as to whether the legislature has in terms commanded these officers to do a ministerial or a legislative act, and it would seem that when the court has determined this matter it has likewise determined the whole question. To levy a tax is to make a law. To make a law is to perform legislative duties; hence to levy a tax is to legislate. The law of 1894 commands these officers to levy a tax; then does it not command them to legislate? If it does, the grant of power is void, as the legislature can not delegate its power to tax.

Cooley on Taxation, page 63, says: "There is nevertheless one clearly defined exception to the rule that the legislature shall not delegate any portion of its authority. This exception relates to the case of municipal corporations —within which, for local purposes, the local authorities may levy taxes. The legislature, however (page 64), in thus making delegation of the power to tax, *must make it to the corporation itself*, and provide for its exercise by the proper legislative authority of the corporation. It cannot confer upon merely ministerial officers the power to make rules—that is, legislation for taxation—and if such officers are given authority to levy and collect taxes, it must be under rules laid down for them."

What is true of the state, says Cooley, page 65, is

equally true of the municipality. That the power they possess to tax must be exercised by the corporation itself and cannot be delegated to its officers or other agencies. The rule applies to whatever is to be done which is legislative in its nature.

In some states, says Cooley, page 76 (2d ed.), "the county courts or county justices are empowered to make the county levies. Their action in ordering taxes is *quasi* legislative and is governed by the same rules as other legislative action."

In the case at bar the "assessor and collector of the city" is required "to levy the tax by levying such rate per cent. as shall raise the amount," which is a legislative act, and he is also, further along in the same section (129, Laws 1894), required "to place the same on the tax roll of the city," which is a purely ministerial act. Here the same officer is made to perform legislative and ministerial duties, the former being void as being an illegal delegation of legislative power.

Three things are essential to the levy of the tax. *First,* the ascertainment of a sum certain or that can be made certain to be imposed upon the tax-payers; *second,* a legal imposition of that sum as an obligation on the collective body of the tax-payers; and, *third,* an apportionment of such sum among individual tax-payers so as to ascertain the part or share that each should bear." *Morton* v. *Comptroller General,* 4 S. Car. 430.

The term "levy" when used in relation to taxes, is held to include not only the ascertainment of the amount necessary to be raised, but also the performance of all such acts as would authorize the tax collector to proceed to collect it. *Moore* v. *Foote,* 32 Miss. 496.

Where the levy is by a subordinate political division it consists of two distinct acts of legislation, first, that of the state giving power to tax and, second, that of the local

authority levying the tax under the power.  *Doe* v. *Mc-Quicklent,* 8 Blackf. (Ind.) 355.

### EQUALIZATION.

Defendants contend that the law which provides for assessing, levying and collecting city school taxes, is illegal in that it does not provide for an equalization of the tax. Defendants contend that if the tax is not to be equalized or is not equalized the collection of the tax would be invalid as being a denial of the constitutional right that the property of the tax-payer is taken from him without *" due process of law : "*

Black in his work on Tax Titles, sec. 123, lays down the rule that a failure to provide for a board of equalization in the law itself, is an attempt to take the tax-payer's property from him without *due process of law* and the collection of the tax will be invalidated by the denial of this constitutional right."    Black on Tax Title, § 123 (2 ed.)

Appellant claims, while admitting that some provisions for equalization is necessary, that section 4, page 74 of laws of 1892, provides all the remedy in this direction that is necessary.    This proposition cannot be sustained for the reason that this section provides only for the equalization of the assessment roll of the county, including the assessment of the general taxes of cities of the first and second class.

If it had been the intention of the legislature that the words "whole county" includes the county tax, general city tax and city school taxes, why did they specially mention the general city tax and not mention the city school taxes?  And why did the legislature provide in the same section that the city should be represented in the equalization board and not make a similar provision in favor of the board of equalization?    We contend that the

section above referred to, with section 129, page 112, of
the laws of 1894, contains all the law upon this subject
and that the legislature of Utah has nowhere provided for
equalization of city school taxes.

KING, J.:

Application was made by plaintiff for a writ of mandate
to compel the defendants, as assessor and collector, re-
spectively, of Weber county, to levy and collect the school
tax assessed by plaintiff to maintain its school system for
the year 1895. Plaintiff averred that it prepared in due
form a statement and estimate of the amount necessary
for the support and maintenance of its schools for said
year,—the sum so estimated being $40,000,—and duly cer-
tified, by its president and clerk, said statement and esti-
mate to said defendants, as assessor and collector, respect-
ively, of Weber county, and for Ogden city, but that said
defendants neglected and refused to levy the rate per cent.
of tax to raise such amount, or to place and extend such
per cent. and levy on the tax roll of said city, the same
being the assessment roll prepared by the assessor of said
county. An alternative writ of mandate was issued, and
thereafter defendants moved to quash the same, and the
motion was granted. From the judgment entered, plaint-
iff appeals.

The questions presented for consideration are of the
highest importance, as they involve the existence of the
public-school system of this territory in all cities of the
first and second classes. The lower court was of opinion
that the legislature had been guilty, not only of unskill-
fullness, but gross negligence, in passing legislation relating
to the school system, and revenue for the support thereof,
as a result of which no instrumentalities had been provided
for levying and collecting school taxes in cities of the first
and second classes. Accordingly it was held that the

plaintiff was not authorized to obtain revenue for school purposes by taxation, and that no duty was incumbent upon defendants to levy or collect any taxes for such purposes. Respondents contend that plaintiff is entitled to no relief, because—*First,* the assessor and collector of Weber county had no power to levy or collect school taxes for plaintiff; *second,* the legislature failed to provide a tax roll upon which a levy of school taxes for plaintiff can be made; *third,* the law confers no authority upon any board or officer to equalize the tax sought to be levied; *fourth,* even if the legislature had attempted to delegate power to defendants to levy the tax in question, the act of delegation would be null and void. While it appears that several questions are involved, an examination of the record and the briefs of counsel show that the real and only question submitted concerns the construction of several enactments of the legislature.

In the year 1890 the legislature passed an act providing for a uniform system of free schools within the territory. In each city of the first and second classes a public corporation was organized, independent of the city, but coextensive with it in territorial area; and provision was made for a board of education, to be elected biennially by the electors of the municipality. This board was invested with power to levy taxes upon the property of the district, and to perform many duties common to *quasi* municipal bodies, and which were deemed necessary for the maintenance of an advanced state system of education. Each year the board was to estimate and levy the taxes necessary for the support of the schools within the district, and to pay interest on bonds, etc. The estimate and levy so made were to be duly certified by the president and clerk of the board to the assessor and collector of the city, and the assessor thereupon was required to place the taxes so levied upon the tax roll of the city, and the city collector

required to collect the same as other city taxes were collected, and pay to the treasurer created by said board.    In 1892 this act was amended by the legislature, and section 129 enacted in lieu of some of the provisions above referred to.    This section is as follows:    "Sec. 129.    The board of education shall, on or before the first day of March of each year, prepare a statement and estimate of the amount necessary for the support and maintenance of the school under its charge, for the school year commencing on the first day of July next thereafter, also the amount necessary to pay the interest accruing during such year on bonds issued by said board, and the amount of sinking fund necessary to be collected during such year for the payment and redemption of such bonds; and shall forthwith cause to be certified by the president and clerk of said board, to the assessor and collector for said city, the amount required for school purposes for the coming year, and the assessor and collector for the city, after having extended the valuation of property on the assessment rolls, shall levy such per cent., as shall as near as may be, raise the amount required by the board; which levy shall be uniform on all property within the said city as returned on the assessment roll thereof, and the said assessor and collector is hereby authorized and required to place the same on the tax roll of the city, and said tax shall be collected by the collector as other city taxes are collected, but without additional compensation for assessing and collecting, and pay to the treasurer of said board, promptly as collected and held by him subject to the order of the board of education; provided that the tax for the support and maintenance of such schools shall not exceed in any one year two mills on the dollar, upon all taxable property of said city."    Sess. Laws Utah, 1892, p. 131, c. 80.

The difficulty in this case seems to arise from the supposed repeal of all statutes providing for the assessing and

collecting of taxes for city and school purposes, as well as those features relating to the assessment roll and equalization of taxes. Chapter 68 of the session laws of Utah of 1892 contains an act passed the same day as the one just referred to, and from which section 129 is quoted. Sections 1, 5–7, and 9, c. 68, provide that in the year 1893, and thereafter, assessment for taxes in all cities, towns and villages in the territory shall be made by the county assessor at the time assessments for territorial and county taxes are made, and that the list of property in each city, and the valuation thereof, shall be so made by the county assessor; that the property in each, and the valuation thereof, will be separately shown; that the general city taxes of cities of the first and second classes shall be extended on the general roll by the county clerk, in a separate column, at the rate certified by the city council, at the same time the territorial and county taxes are extended, and such taxes, together with the county and territorial taxes, shall be collected by the county collector at the times and in the manner provided by law for collecting territorial and county taxes; that the county collector, before receiving city taxes, shall give such bond for the faithful performance of his duties as "collector of the city tax" as may be required by the mayor or city council, and all taxes collected by him shall be paid to the city treasurer. Section 9 closes the chapter, and abolishes the office of assessor for each city, town and village, and the office of collector in each city of the first and second classes. In 1894 the legislature again amended the school law, but re-enacted section 129, above referred to, with but slight modification, the change not affecting the question under discussion; and we will therefore regard section 129 of the act of 1892 as the source of power under which plaintiff seeks relief.

Before construing these acts, reference to some of the

rules for the interpretation of statutes will be proper. It is clear, from the various acts to which we have referred, that it was the purpose of the legislature to make ample provision for the maintenance of free schools within the territory, and to confer upon boards of education in the larger cities power to construct schoolhouses, levy and collect taxes, and perform all necessary acts essential to establish and successfully maintain free public schools. So, where there is ambiguity or apparent incongruities in statutes, the first question to be considered is; what is the subject of it, and what object is intended to be accomplished by it? "When the subject-matter is once clearly ascertained, and its general intent, a key is found to all its intricacies. General words may be restrained to it, and those of a narrower import may be expanded to embrace it, to effectuate that intent. When the intention can be collected from the statute, words may be modified, altered, or supplied, so as to obviate any repugnancy or inconsistency with such intention." Suth. St. Const. § 218. In the case of *People* v. *Hill,* 3 Utah, 334, 3 Pac. 75, this court held that the reference to section 152 of the criminal practice act, in subdivision 2 of section 192 of the same act, was manifestly a mistake, and did not express the legislative intent. Considering the subject-matter of which the legislature was treating, the court held that the legislative intent could only find expression in section 151, and said: "Subdivision 2 of section 192 will be read as though the reference were to section 151, instead of 152. Any other construction would lead to an absurdity, and should be rejected." In the construction of a statute, if the meaning of the legislature is manifest, the intention will be carried into effect, although apt words are not used in the act; and this rule ought to, and does, go to the extent of correcting errors and mistakes which are clear and obvious, and without which correction no effect could

be given to the statute. *Middleton* v. *Greeson* (Ind. Sup.), 5 N. E. 755; *Silver* v. *Ladd*, 7 Wall. 219; *Lau Ow Bew* v. *U. S.*, 144 U. S. 47, 12 Sup. Ct. 517. In the case of *Lancaster Co.* v. *Fry*, 128 Pa. St. 593, 18 Atl. 480, the court held that the word "county," in the statute, was intended to mean "city," and substituted the latter for the former. It was said: "It needs no argument to show that the word 'county' was mistakenly written for 'city,' and it is a mistake apparent on the face of the act, which may be rectified by the context. * * * We are enabled to carry out the intention of the legislature from the plain and obvious meaning of the context, in which the real purpose and intention of the legislature is manifest." This does not mean that the statute is changed, or that there is legislation by the courts; but it is clearly the duty of the court to ascertain the intention of the legislature, to vitalize its enactments, and to so construe them that absurdities will not result, but the evident purpose of the legislature be effectuated. And for this purpose a technical and narrow construction is to be avoided, which might defeat the intention; and the literal sense of the language, or the natural import of the words, greatly varied, to give effect to the fundamental purpose clearly apparent by the statute.

Respondents' construction of the statutes would lead to the destruction of a portion of the public-school system of the territory. Buildings in course of erection could not be completed, teachers engaged for the year would be discharged, thousands of children now receiving high educational advantages turned from the school-room, debts contracted remain unpaid, tax sales of cities of the first and second classes rendered invalid, innumerable suits to quiet title would inevitably follow, and great hardship and public inconvenience ensue. So we think these acts should be construed in the most beneficial way which their lan-

guage will permit, to prevent absurdities, hardships, or injustices, to favor public convenience, and to oppose all prejudice to public interests. "A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter, and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers." *Riggs* v. *Palmer*, 115 N. Y. 506, 22 N. E. 188; *Tonnele* v. *Hall*, 4 N. Y. 140; *People* v. *Lacombe*, 99 N. Y. 49, 1 N. E. 599. It was said by Chief Justice Shaw in *Com.* v. *Kimball*, 24 Pick. 370, that, "where any particular construction would lead to an absurd consequence, it would be presumed that some exception or qualification was intended by the legislature, to avoid such construction." It was said in 11 Cal. 222, in the case of *Ex parte Ellis*, that, "as it is the duty of the courts to execute all laws according to their true intent and meaning, that intent, when collected from the whole and every part of the statute, taken together, must prevail, even over the literal sense of the terms, and control the strict letter of the law, when the latter would lead to possible injustice, contradiction, and absurdity." See *Jackson* v. *Collins*, 3 Cow. 89; *Pickering* v. *Day*, 95 Am. Dec. 292; *Ryegate* v. *Wardsboro*, 30 Vt. 746; *Heydenfeldt* v. *Mining Co.*, 93 U. S. 634; *Brinsfield* v. *Carter*, 2 Ga. 143; *Turner* v. *State*, 40 Ala. 21. And it must not be forgotten that the acts in question relate to revenue, and pertain to the carrying on of a portion of the government, viz., the public schools. "A revenue law is not to be strictly construed, but rather the contrary, so as to attain the ends for which it was enacted. Revenue statutes are not to be regarded as penal, and therefore to be construed strictly. They are remedial in their character, and to be construed liberally, to carry out the purposes of their enactment." Cooley, Tax'n, p. 269; *U. S.* v. *Hodson*, 10 Wall. 398.

It is also shown by the record, and it is a matter of public knowledge, that ever since the passage of the acts of 1892, just referred to, until the commencement of these proceedings, there has been no controversy respecting the interpretation to be placed upon these statutes. They have been construed, with practical unanimity, in harmony with the contention of the plaintiff, and officials in the cities of the first and second classes have uniformly executed them. That being true, the court, where a law is doubtful or ambiguous, resorts to the contemporaneous construction of those who have executed the statutes. *Hahn* v. *U. S.*, 107 U. S. 406, 2 Sup. Ct. 494; *Insurance Co.* v. *Hoge*, 21 How. 66; *People* v. *Dayton*, 55 N. Y. 367. Such contemporaneous construction "has almost the force of a judicial exposition, and, unless such legislation and the practice is manifestly in violation of the words used, the greatest weight should be given to it, in construing them." Cooley, Const. Lim. 67. It is evident the purpose of chapter 68, just referred to, was to provide for a uniform system of assessing property. When the school law of 1890 was passed, each city and county had an assessor, and the valuation of property for county and territorial purposes was different from that for city and school purposes. To rectify this evil, and in the interest of economy, the duties of the city assessor and collector in cities of the first and second classes were devolved upon the county assessor and collector. But while the defendants were the assessor and collector, respectively, of Weber county, they were also the assessor and collector of Ogden city. They occupied a dual position. Chapter 68 devolved upon them the duties theretofore performed by the city assessor and collector of Ogden city. While selected by the electors of the county, they were made officials of the city. Section 1 required the county assessor to assess the property of the city for city purposes;

and the county collector, by section 6, was required to give bond to the city, conditioned for the faithful performance of his duties as city collector, among which duties was to pay over to the treasurer of the city all city taxes by him collected. It is to be further observed that while chapter 68 was passed in March, 1892, prior to the assessing and collecting for that year, the county assessors and collectors were not to operate under it until 1893. So that the city assessors and collectors operated under the old statutes for the year 1892.

In section 129 of the school law, passed the same day as chapter 68, this language is used: "* * * And shall forthwith cause the same to be certified by the president and clerk of said board to the assessor and collector for said city." This language subserves a dual purpose. It refers to officers who were, in every sense, city officers for the year 1892, as well as to the persons who, by reason of their county positions, became assessors and collectors of the cities. The language, "assessor and collector for the city," clearly means the persons who assess and collect for the cities, whoever such persons may be. Section 129, referred to was intended to refer to two different sets of officers. It was necessary that such language should be used as to bear such construction. Viewing chapter 68 and section 129 in this light, it becomes apparent that the legislative language is appropriate to express the legislative intent. Section 6 of chapter 68, in express language, refers to the county collector as "collector of the city tax," and "collector of the city tax" is synonymous with "collector of the city;" and section 129 indicates the legislative intention to devolve upon assessors and collectors for cities, whoever they may be, the necessary labor and duty of assessing and collecting taxes for the school districts within them. Respondents contend that there is no

"tax roll of the city," as contemplated by section 129, because of the repealing provisions of chapter 68. Section 129, with respect to this question, again performs a double duty. It refers to the tax roll of the city prepared and owned by the city, as was the case in 1892, and anterior thereto, and also to the "tax roll of the city" prepared by the county assessor in 1893 and thereafter. We see no uncertainty or ambiguity in the language of this section, relating to this subject. The "tax roll of the city," after chapter 68 went into effect, was the assessment list prepared by the county assessor, and which contained the property within the county, and its valuation, and separately indicated the property of the city, with its valuation. We see no reason why one assessment roll may not be the tax roll for numerous political subdivisions. In fact, before the legislation under consideration, this was the case. The roll prepared by the county assessor contained the basis of assessment for county, territorial, and territorial school taxes, and there was no pretense that, because prepared by a county official, it was not a territorial assessment roll. We think the assessment roll containing the property of the city and its valuation, prepared by the county assessor, was and is the "tax roll of the city," within the contemplation of section 129.

Respondents also insist that section 129 is unconstitutional, because it attempts to delegate power to a ministerial officer to perform a legislative act. There can be no doubt of the power of the legislature to carve the territory into school districts, and to invest such districts with the power to tax for school purposes. Cooley, Tax'n, p. 61; *King* v. *Railway Co.*, 6 Utah, 281, 22 Pac. 158; *Kuhn* v. *Board*, 4 W. Va. 499; *Wharton* v. *Directors*, 42 Pa. St. 358. If the legislature conferred upon the board of education of Ogden city the power to levy taxes for school purposes, any attempt upon the part of the board

to delegate that power to some other body or person would be futile.    Does section 129 mean that the assessor and collector are to levy taxes?    The act of 1890, above referred to, provided that the board of education each year shall prepare an estimate, and levy the necessary taxes for the support of the schools for the year, and certify to the assessor and collector of the city the per cent. levied on the property within the city.    We do not think this provision is materially changed by section 129.    It is clear, the purpose of the act of 1890 was to devolve upon the school board legislative power to levy the requisite taxes for school purposes, and to devolve upon the assessor and collector of the cities the mere ministerial or perfunctory duty of valuing the property within the city, and collecting the taxes so levied.    Section 129 is not as definite and precise as the act of 1890, but the meaning seems obvious. The board of education shall "prepare a statement and estimate of the amount necessary for the support and maintenance of schools."    This, we think, is equivalent to a levy of the tax, when accompanied by the further duty of certifying by the "president and clerk of said board to the assessor and collector for said city."    The act of preparing and estimating the amount is the performance of a legislative act.

In the case at bar the board, in a legislative capacity, estimated that $40,000 were required for school purposes for the current year,—that is, they levied a tax of $40,000 upon the taxable property within the school district,—and the result of their action was reduced to writing, and certified by the president and clerk of the board.    This was the exercise of legislative power.    In the same manner the territorial legislature estimates the various amounts required for the maintenance of public institutions, and passes an appropriation bill embodying such amounts.    This is a legislative act.    Thereafter the assessors and collectors of

the various counties determine the valuation of property within their respective counties, and collect the necessary sum to meet the appropriation made by the legislature. We see no difference in principle where the board certifies to the assessor that four mills have been levied by them for school purposes, if such a rate would result in placing in its treasury $40,000, and determining that $40,000 were required, and certifying to the assessor that that amount was estimated or required for school purposes. In the one case the board simply anticipates the value of the property, and estimates what rate per cent. would realize the amount required. In the other case they estimate the amount required, and the assessor performs the perfunctory duty of figuring or calculating what rate will produce such sum. We think there is no attempt to delegate power to the assessor or collector to levy taxes for school purposes. The levy is complete when the board duly prepares and estimates the amount required for school purposes, and properly certifies to the assessor and collector such amount. The latter then makes the mathematical calculation of the rate per cent. upon the property within the district essential to realize the amount levied by the board.

We think respondents' third objection is not well taken. Section 4, c. 68, *supra,* provides that "the county court of each county shall equalize the assessment roll of the whole county, including the assessment for general taxes of cities of the first and second class situated in the county. * * * The mayor of said city, or a member of the city council thereof, appointed by the city council, may sit with the county court, and be a member of the equalizing board." The assessment roll mentioned in section 129 is the same as that referred to in section 4; and as it is provided in the school law that the "levy shall be uniform on all property within the city, as returned on the assessment roll," and the assessment for school pur-

poses is extended on the city assessment roll, the equaliza-
tion by the county court, under the auspices of the city,
obviates the objection urged.

We think that the statutes to which we have referred
are not so repugnant as to be incapable of reconciliation.
They relate to a common subject, the intention of the
legislature is clearly discernible, and the construction which
we have given them is certainly within the spirit, if not
within the letter, of the law. We are of opinion that these
statutes provide a general educational scheme within cities
of the first and second classes, and, though unskillfully
drawn, are not to be overturned by the objections which
respondents have urged against them. The judgment of
the lower court is reversed, and the case remanded, with
directions to the lower court to grant the writ of mandate
as prayed for by the plaintiff.

MERRITT, C. J., and BARTCH, J., concur.